671 F.2d 30
 28 Fair Empl.Prac.Cas. 47, 28 Empl. Prac.
Dec. P 32,439
Elizabeth HOLDEN, Plaintiff-Appellant,
v.
COMMISSION AGAINST DISCRIMINATION OF the COMMONWEALTH OF
MASSACHUSETTS, Douglas Scherer and Francis Lynch,
Defendants-Appellees.
Elizabeth HOLDEN, Plaintiff-Appellee,
v.
COMMISSION AGAINST DISCRIMINATION OF the COMMONWEALTH OF
MASSACHUSETTS, Defendants-Appellants.
 Nos. 81-1046, 81-1073.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 10, 1981.
Decided Feb. 17, 1982.
 
 Alanna G. Cline, Brighton, Mass., with whom Paul A. Manoff, Boston, Mass., was on brief, for Elizabeth Holden.
 Joan Entmacher, Asst. Atty. Gen., Civil Rights Bureau, Public Protection Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Commission Against Discrimination of the Com. of Mass., Etc.
 Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 Elizabeth Holden appeals from the decisions of the district court dismissing her claims under 42 U.S.C. §§ 1983, 1985, and 1988 (the Civil Rights Acts) against the Massachusetts Commission Against Discrimination (MCAD) and two former Commissioners, Douglas Scherer and Francis Lynch, and granting defendants' motion under Fed.R.Civ.P. 41(b) to dismiss her Title VII claim. The Civil Rights Acts claims were dismissed as time-barred. The district court dismissed the Title VII claim, 42 U.S.C. § 2000e et seq., on the ground that at the close of her evidence Holden had failed to establish a right to relief. We are presented with questions concerning the application of the appropriate statute of limitations to claims under the Civil Rights Acts and the evidentiary burdens imposed on parties in a Title VII case. We have jurisdiction under 28 U.S.C. § 1291.
 
 
 2
 Holden, a black woman, was employed as a public information officer at MCAD from March or April, 1970, until August 31, 1973, when she was dismissed. Holden claims that her dismissal was racially motivated; defendants argue that it was based on other, legitimate reasons. By way of background, we review briefly the evidence presented in plaintiff's case. When she was hired, Holden never received a written description of her position, but her principal tasks were to obtain publicity for the MCAD, to both advertise the agency's accomplishments and inform the Massachusetts public of the MCAD's availability to hear discrimination complaints, and to prepare reports summarizing the MCAD's work. Holden's job and her performance went smoothly until Scherer was appointed to the MCAD. Holden's evidence painted a most unattractive portrait of life at the MCAD after Scherer's arrival; petty political interests dominated the activities of most of the upper-level officials. Based on evidence submitted to the district court, it is fair to say that Scherer arrived at the MCAD intent on dominating (if not taking over) the agency, although he was not chairperson. Scherer attempted to reorganize the agency with the result that there was much confusion between Holden and the Commissioners as to whom Holden reported. Apparently loyal to the then-chairperson, Glendora Putnam, Holden resisted to some degree the efforts of Scherer to oversee her work. She continued to work intently, perhaps too much so, according to Putnam. On the other hand, evidence was also presented of cooperation between Holden and all of the Commissioners and of the Commissioners' satisfaction with much of Holden's work. Apart from Holden's own experience, some blacks at the MCAD received less favorable treatment than whites in certain respects, but other blacks, such as Putnam and Holden's successor as public information officer, appeared not to have been subjected to any disparate treatment.
 
 
 3
 The tension between Holden and the Commissioners came to a head on May 3, 1973, when Holden learned from Scherer and Lynch that she would be discharged. She was in fact fired by vote of 2-1 of the Commission, Scherer and Lynch in favor and Putnam dissenting. On May 4, 1973, Holden filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race and sex discrimination. The EEOC referred the complaint to the counterpart state agency, MCAD, which because it was Holden's employer, declined to act for conflict of interest reasons and returned the matter to EEOC on May 10, 1973. On August 31, 1973, the EEOC sent a right-to-sue letter to Holden, which she received on September 4. She subsequently filed a complaint on November 28, 1973, charging that MCAD had discriminated against her on the basis of race and sex in violation of 42 U.S.C. § 2000e-2. Apparently because of Holden's difficulty in finding and keeping legal counsel, the complaint was not served on MCAD until June 11, 1975. Holden moved to amend her complaint on July 13, 1979, dropping the sex discrimination allegation, adding claims under 42 U.S.C. §§ 1983, 1985, and 1988 for violation of her first amendment, equal protection, and due process rights, and adding as defendants Scherer and Lynch. By order of December 27, 1979, the district court allowed the amendments.
 
 
 4
 The district court granted summary judgment for the defendants on the Civil Rights Act claims. The court held that under our decision in Burns v. Sullivan, 619 F.2d 99 (1st Cir.), cert. denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), the limitations period applicable to those claims was six months, as provided in Mass.Gen.Laws Ann. ch. 151B, § 1 et seq. Even though deciding that the amended claims related back to the time of the filing of the original complaint, the district court found that the limitations period had begun to run on May 3, 1973, the day Holden learned of her discharge, and had expired before November 28, the day the original complaint was filed. The claims were therefore held to be time-barred.
 
 
 5
 The action did proceed to trial on the Title VII claim of racial discrimination. At the close of plaintiff's case, defendants moved to dismiss under Fed.R.Civ.P. 41(b). The district court granted the motion, finding that Holden had failed to show that her dismissal was the result of race discrimination and that she had been discharged for a legitimate reason, failure to accept the directions of all of the Commissioners of MCAD. The district court was not persuaded that evidence of disparate treatment of blacks and whites at MCAD raised an inference of illegal discrimination against Holden when the direct evidence concerning Holden's discharge revealed no such motive.
 
 
 6
 The first issue is the applicable statute of limitations. Two questions confront us: what is the appropriate limitations period for Civil Rights Acts claims, and when does the period begin to run. The answer to the first question is dictated by our recent opinions in Hussey v. Sullivan, 651 F.2d 74 (1st Cir. 1981) (per curiam), and Burns v. Sullivan, 619 F.2d 99. The applicable limitations period here is six months. In Burns, we held that in Massachusetts a claim of race discrimination under 42 U.S.C. §§ 1983 and 1985(3) is subject to the six-month limitations period provided for in the "most analogous" state statute, Mass.Gen.Laws Ann. ch. 151B, § 5. Id. at 105-06. In Hussey, we followed the Burns analysis and affirmed Chief Judge Caffrey's ruling, Hussey v. Sullivan, 498 F.Supp. 594, 597-98 (D.Mass.1980), that a claim of political discrimination under 42 U.S.C. §§ 1983 and 1985(3) was also subject to a six-month limitations period, although this period is contained in a different analogous statute, Mass.Gen.Laws Ann. ch. 31, § 42. Hussey v. Sullivan, 651 F.2d at 76.
 
 
 7
 Holden's amended complaint alleges violation of her first, fifth, and fourteenth amendment rights in contravention of 42 U.S.C. §§ 1983 and 1985. The limitations periods covering her free speech and equal protection claims are both six months, as required under Hussey and Burns, respectively.[1] Holden argues that Hussey and Burns should not apply to her because she does not have available the administrative remedies that are contemplated by the statutes applied in those cases.[2] The unavailability of the state administrative remedies does tend to vitiate the policies we observed in Burns, 619 F.2d at 107, that underlie application of state statutes of limitations to Civil Rights Acts claims.[3] Nevertheless, the statutes applied in Hussey and Burns are still "most analogous" to Holden's claims, and we see no reason to give her a longer limitations period than that available to other public employees in Massachusetts. We do not think that the decision of the Massachusetts legislature not to give certain public employees such as Holden an administrative remedy entitles them to a longer limitations period. Finally, Holden did have available a federal administrative remedy under Title VII, the limitations period for which is also approximately six months, 42 U.S.C. § 2000e-5(e) (180 days) so application of a six-month period to her free speech and equal protection claims as well as does not seem unfair.
 
 
 8
 The allegations of fifth and fourteenth amendment violations also contain a due process element, however, for which Burns and Hussey do not provide an immediate answer. We therefore must examine Massachusetts law to find the statute of limitations "most analogous" to a federal claim of a violation of due process in an employee discharge. Four statutes are candidates for "most analogous." Mass.Gen.Laws Ann. ch. 151B, § 5 (discrimination complaints filed with MCAD, six months); Mass.Gen.Laws Ann. ch. 31, § 42 (actions for reinstatement to civil service positions, six months); Mass.Gen.Laws Ann. ch. 260, § 2A (amended 1974) (torts generally, two years); and Mass.Gen.Laws Ann. ch. 260, § 2 (contracts generally, six years). Under Burns, we must make a four-part inquiry: "(1) the nature of the federal cause of action ...; (2) the analogous state causes of action; (3) the state statutes of limitations for those causes of action; and (4) which of the state statutes of limitations is the most appropriate under federal law...." Burns v. Sullivan, 619 F.2d at 105 (citations omitted). We find that Holden's due process claim is most analogous to a Massachusetts civil servant's suit alleging an improper discharge, the limitations period for which is six months under Mass.Gen.Laws Ann. ch. 31, § 42. We do not believe that a longer limitations period is appropriate for enforcement of the federal claim because equally important speech and equal protection claims are also subject to six-month statutes of limitations.
 
 
 9
 We must also determine the date from which the six-month limitations period began to run. Holden argues that the date is September 4, 1973, the day she received her right-to-sue letter from the EEOC. MCAD suggests that the period began to run from either the date of the alleged act of discrimination, May 3, 1973, or the date on which the state agency (MCAD itself) declined jurisdiction of Holden's complaint originally filed with the EEOC, May 10, 1973. Three Supreme Court opinions dictate that we hold that the limitations period began to run from the date of notice of dismissal, May 3, 1973. First, in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court held that the limitations period applicable to a cause of action under 42 U.S.C. § 1981 began to run from the date of the wrong (discharge from employment) and was not tolled by proceedings under 42 U.S.C. § 2000e-5. The Court based its holding on the independence of the remedies available under § 1981 and Title VII. Next, in Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Court ruled that for statute of limitations purposes, the date of the wrong-in this case, denial of tenure-giving rise to a § 1981 claim was the date on which the employee received notice of his impending dismissal, not the date on which the employee actually had to leave employment. The Court extended this ruling in its third opinion, a summary reversal of our opinion, Rivera Fernandez v. Chardon, 648 F.2d 765 (1st Cir. 1981), rev'd, --- U.S. ----, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). That case involved an employee discharge suit under 42 U.S.C. § 1983. Although the discharge did not involve tenure, the Court nevertheless held that the statute applicable to the § 1983 claim began to run from the date of notice of termination, not from the date of actual termination.
 
 
 10
 The issue of the application of the statute of limitations in the instant case is indistinguishable from that in Chardon. For statute of limitations purposes, the date of the wrong is the date of the advance notice of termination in § 1983 cases. In light of Chardon and Johnson, we must disapprove our dictum in Burns v. Sullivan, 619 F.2d at 106-07, suggesting that the statute of limitations begins to run on a § 1983 claim from the date of the decision of the state administrative agency on any civil rights complaint. Before Chardon, a case such as this one involving § 1983 might have been distinguishable from Johnson and Ricks, which concerned § 1981 claims, but we see nothing in the language or evident purposes of the statutes that would require different rules for application of the statutes of limitations. Nor do we see any reason to subject a § 1985 claim to different rules.[4] We hold that the six-month statutes of limitations had begun to run on Holden's Civil Rights Acts claims on May 3, 1973, and that the period had expired by the time the original complaint was filed, November 28, 1973.
 
 
 11
 The district court dismissed Holden's Title VII claim after she had presented her evidence on motion from the defendants under Fed.R.Civ.P. 41(b).[5] Holden urges us to reverse this decision, arguing that the district court's analysis of the facts and the law was erroneous under Title VII standards. We must make two determinations: whether the district court's findings of fact were clearly erroneous, Skar v. City of Lincoln, 599 F.2d 253, 258 (8th Cir. 1979), and whether the district court understood the burdens of persuasion and production required under Title VII. The district court, in determining a Rule 41(b) motion during a bench trial, is entitled to consider all the facts, 5 Moore's Federal Practice P 41.13(4), at 41-193 to -194, including weighing the credibility of witnesses, Fed.R.Civ.P. 41(b), Notes of Advisory Committee on Rules, 1946 Amendment (citing cases); 9 Wright & Miller, Federal Practice & Procedure § 2371, at 224-25.
 
 
 12
 Before turning to the sufficiency of Holden's evidence, we set out the rules regarding burdens of production and persuasion in Title VII cases. The fundamental rule is that the Title VII plaintiff must establish a prima facie case of racial discrimination. If he or she succeeds, the defendant must then articulate a legitimate, nondiscriminatory reason for the plaintiff's dismissal from employment. The plaintiff is allowed an opportunity to show that defendant's stated reason is only a pretext concealing underlying racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-1825, 36 L.Ed.2d 668 (1973). In presenting its nondiscriminatory reason, defendant need not prove absence of discriminatory motive; it need only articulate a legitimate reason. Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), rev'ing 569 F.2d 169 (1st Cir.). Defendant need not prove that it was motivated by its stated reason. The proffered reason is sufficient if it raises "a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The burden on the defendant is only to rebut the plaintiff's prima facie case; the burden of persuasion rests at all times with the plaintiff. Id.; Sweeney v. Board of Trustees of Keene State College, 604 F.2d 106, 108 (1st Cir. 1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); Loeb v. Textron, Inc., 600 F.2d 1003, 1011-12 (1st Cir. 1979).
 
 
 13
 Holden argues that the district court prevented her from demonstrating that the stated reasons for her discharge were pretextual. According to Holden, she believed that she had presented a prima facie case-and, she argues, the district court so found-and she expected that the defendants would articulate legitimate reasons during their case, which reasons she would then show to be pretextual. The Seventh and Ninth Circuit Courts of Appeals have rejected similar arguments, e.g., Gaballah v. Johnson, 629 F.2d 1191, 1200 (7th Cir. 1980); Sime v. Trustees of the California State University and Colleges, 526 F.2d 1112, 1114-15 (9th Cir. 1975), and we join their ranks. Plaintiff's position, were we to accept it, would impose a rigid, three-step proof process in Title VII cases that we conclude is not required by the Title VII proof rules outlined above. The purpose of the allocations of burdens of proof in Title VII cases is, as the Supreme Court has observed, "to sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. at 255 n.8, 101 S.Ct. at 1094. Requiring the defendant to articulate a legitimate, nondiscriminatory reason serves in part the purpose of "fram(ing) the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Id. at 255-56, 101 S.Ct. at 1095. In determining the propriety of a Rule 41(b) dismissal of a Title VII claim, the question is whether plaintiff had notice of defendant's stated reasons for dismissal and an opportunity to demonstrate their pretextual character. In the instant case, the reasons on which defendants purport to have relied appeared in a memorandum from the MCAD dated August 27, 1973, and were, according to testimony, received by Holden. The memorandum was introduced as plaintiff's exhibit. This memorandum, together with cross-examination of Putnam, which lent some support to the reasons stated, gave plaintiff ample notice of defendants' reasons. As to opportunity, review of plaintiff's case reveals that Holden not only had an opportunity to attack the reasons but in fact introduced evidence tending to show the pretextual nature of those reasons. We conclude that granting the Rule 41(b) motion did not unfairly cut off Holden's ability to disprove defendant's stated reasons for her discharge.
 
 
 14
 We next examine the sufficiency of the evidence and focus on the last stage of proof under McDonnell Douglas, whether plaintiff demonstrated that the stated discharge reasons were pretextual. Although the district court did not find explicitly that Holden had made out a prima facie case of a Title VII violation, it is arguable that it did so implicitly-it concluded that Holden had failed to carry her burden of showing that the stated reasons for her dismissal were pretextual-and for purposes of this appeal we will assume that a prima facie case was made out. The district court did find specifically that Holden was capable, that she was devoted to her job (perhaps too much so), and that her written work was satisfactory to Putnam, who wrote a letter of recommendation for her. Our review of the evidence convinces us that these findings were appropriate.
 
 
 15
 The stated reasons for Holden's dismissal were four:
 
 
 16
 1. Inability and/or refusal to function with and accept direction, supervision and assignments from the Commissioners of the Massachusetts Commission Against Discrimination.
 
 
 17
 Inability and failure to accept criticism, supervision of her work product or proposals.
 
 
 18
 ....
 
 
 19
 2. Inability and/or incompetence in the performance of her duties and responsibilities as Public Information Officer.
 
 
 20
 ....
 
 
 21
 3. Inability and failure to supervise support personnel assigned to the Employee.
 
 
 22
 ....
 
 
 23
 4. Inability to work within the purview of the Rules and Regulations of State Government and the administrative rules of this agency.
 
 
 24
 ....
 
 
 25
 In conclusion, the Commissioners after due consideration determined that the failings cited above are persistent; that the employee was unable to accept changes, suggestions and criticism and thus, not acceptable for continued employment.
 
 
 26
 Plaintiff's Exhibit 40. The evidence adduced on cross-examination of plaintiff's witnesses, and even during plaintiff's own case, lent support to the first three reasons but little support to the last.
 
 
 27
 The district court, although not referring to these stated reasons by number, relied on facts presented in support of the first two reasons. The court made three principal findings, stressing Holden's failure to accept the supervision of all of the Commissioners. First, it found that Holden failed to abide by the process (a result of Scherer's reorganization) that required her to obtain unanimous approval from the Commissioners before communicating material to the public. Although there is evidence suggesting that the unanimous approval requirement was a temporary rule, its existence even for a period, together with the evidence of Holden's growing hostility to Scherer, which the district court also found, amply supports a finding that Holden resisted the direction of her superiors. Second, the district court found that Holden had not prepared any monthly or quarterly reports summarizing MCAD activity, as the Commissioners had repeatedly requested. Holden presented evidence of her difficulty in obtaining statistics and other information from MCAD field offices. The district court recognized this, but also found that Holden still shared responsibility for preparing the reports. Moreover, Holden directly refused to compile the reports, telling Putnam that she had more important things to do. By not completing the reports, Holden failed to perform one of her duties and, again, resisted the Commissioners' supervision. The district court's third finding was that Holden did not attend regular meetings of the MCAD, as she was required to do. Although Holden did not receive notice of all of the meetings, she had easy access to information about meetings and could have learned of their scheduling if she wanted. Her attendance at the meetings decreased and eventually stopped altogether. Our review of the record persuades us that this finding, too, is correct and reveals Holden's reluctance to accept the Commissioner's directions. The district court made no findings going to the MCAD's third and fourth stated reasons. Testimony and documentary evidence introduced at trial would have supported a finding that the third reason-Holden's harsh supervision of her clerical and secretarial staff-was also a solid and legitimate one. The fourth stated reason, however, which reflects merely the MCAD's annoyance at Holden's repeated requests for more support services, received little or no support during plaintiff's case.
 
 
 28
 Holden asserts that these findings were erroneous for essentially two reasons. First, failings were incorrectly attributed to her that were actually the result of defects elsewhere at MCAD. Second, evidence of disparate treatment of blacks and whites at MCAD raises an inference that Holden was also a victim of race discrimination, particularly in light of the weak evidence behind MCAD's stated reasons for her firing. With respect to the first contention, we believe that, although the district court correctly found that Holden did indeed have to work for an agency that was not functioning smoothly, the court was also correct in finding that Holden herself had failed to satisfy some of her job requirements. As to the second, the evidence of disparate treatment was less than overwhelming: some of the disparate treatment could be explained on nonsuspect grounds, and many blacks were not subject to disparate treatment. On review of the record, we conclude that this evidence is not sufficient to compel us to disregard evidence of Holden's personal failings. We hold, therefore, that the district court's fact findings and conclusion that Holden was not the victim of race discrimination were not clearly erroneous.
 
 
 29
 The individual appellees, Scherer and Lynch, also raise a statute of limitations defense to the Title VII claim, a defense that was rejected by the district court. Scherer and Lynch argue that the amended complaint, which added them as defendants to the Title VII claim that had already been asserted in the original complaint,[6] does not relate back under Fed.R.Civ.P. 15(c). Under that rule,
 
 
 30
 an amendment adding a party ... relate(s) back to the date of the original pleading if three conditions are met: (1) the claims against the new party arise out of the same occurrence as the claims in the original pleading, (2) the new party received "notice of the institution of the action" before the limitations period expired, and (3) the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."
 
 
 31
 Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 102 (1st Cir. 1979), quoting 6 Wright & Miller, Federal Practice & Procedure § 1498, at 507 (1971). The district court, however, did not determine whether the third condition had been fulfilled. Under these circumstances, we would ordinarily remand the case in order for the district court to make the necessary findings under Rule 15(c). Because we are able to dispose of this appeal on other grounds, however, we do not remand the case, and we venture no opinion on whether the Title VII claim against Scherer and Lynch does relate back under Rule 15(c).
 
 
 32
 The decisions of the district court are affirmed.
 
 
 
 [1]
 The district court ruled that Burns and Mass.Gen.Laws Ann. ch. 151B, § 5 governed all of the claims for statute of limitations purposes. We, of course, do not agree, but we note that the district court's opinion preceded even Judge Caffrey's opinion in Hussey
 
 
 [2]
 Holden represents to us that she was not appointed as a civil servant and was not entitled to the administrative protections provided to civil servants under Mass.Gen.Laws Ann. ch. 31
 
 
 [3]
 Our concern in Burns was that if federal claims enjoyed longer limitations periods than state claims, plaintiffs would bypass state administrative remedies thereby preventing prompt resolution of personnel disputes and converting federal courts to surrogate state personnel departments. Burns v. Sullivan, 619 F.2d at 107
 
 
 [4]
 42 U.S.C. § 1988, which provides for attorney's fees awards in successful suits under §§ 1981, 1983, 1985 and other civil rights statutes, should also be subject to the same rules as those statutes
 
 
 [5]
 Fed.R.Civ.P. 41(b) provides in pertinent part as follows:
 (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).
 
 
 [6]
 The original complaint was filed on November 28, 1973, within 90 days after Holden had received a right-to-sue letter from the EEOC on September 4, 1973, thereby satisfying the limitations period of 42 U.S.C. § 2000e-5(f)(1)