Louise LAMPHERE, et al.,
Plaintiffs-Appellees,

v.

BROWN UNIVERSITY, et al.,
Defendants-Appellees,

Claire Rosenfield, Claimant-Appellant.

No. 80–1524.

United. States Court of Appeals,
First Circuit.

Argued March 1, 1982.

Decided July 22, 1982.

Jordan S. Stanzler, New York City, for claimant-appellant.

Peter J. McGinn, with whom Tillinghast, Collins & Graham, and Beverly E. Ledbetter, Gen. Counsel, Providence, R. I., were on brief, for defendants-appellees.

Linna M. Barnes, Washington, D. C., on brief for The Women's Equity Action League, amicus curiae.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

This is a claim of sex discrimination against Brown University (Brown) brought pursuant to the procedures established by a consent decree entered into by Brown and a class of female faculty members who alleged various acts of sex discrimination in employment violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended. See generally Lamphere v. Brown University, 491 F.Supp. 232, 238–46 (D.R.I.1980) (text of consent decree). As provided by paragraph 2(M)(2)(h) of the decree, plaintiff-appellant Claire Rosenfield was entitled to and sought a de novo hearing in the district court from a hearing panel decision, decided partially in her favor.[1] Appellant claimed illegal sex discrimination in the fixing of her salary at the time of her initial hiring in 1969 as well as in 1970–71, in Brown's failure to grant her a pay raise in 1971–72, and in its failure to "catch up" her salary during 1972–78. She

also claimed that Brown illegally discriminated against her by refusing to appoint her to the editorial board of NOVEL, a scholarly journal published at Brown, by delaying her grant of tenure, and by refusing to promote her to a full professorship. The district court, applying the standards of proof articulated in Sweeney v. Board of Trustees of Keene State College, 604 F.2d 106 (1st Cir. 1979) (Sweeney II), cert. denied, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980), and Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979), found that as to each claim appellant had established a prima facie case of discrimination, that Brown had produced sufficient evidence to meet her prima facie case, and that she failed to prove by a preponderance of the evidence that Brown's articulated reasons for its actions were pretexts for illegal discrimination. Accordingly, the district court dismissed appellant's action.

Some general facts about the hiring process at Brown are a necessary prelude to our analysis. Throughout the period relevant to this appeal, the chairman of the department in question, in consultation with the provost of the University, made salary and hiring decisions. The provost established a budget for each department, and the department chairman would recommend certain salary levels to the provost for his approval. Although some effort was made to achieve overall salary comparability between departments, each department chairman had wide latitude in setting individual salaries. Professor Mark Spilka was chairman of the English Department from 1968 to 1973. Professor A. D. Van Nostrand succeeded Spilka from 1973 to 1978.

Faculty salaries for both visiting and regular appointments were not determined according to objective standards. Rather, they were based on a number of considerations, including departmental need, teach-

---

1. Addressing essentially the same claims that appellant brought before the district court, the hearing panel found that Brown had intentionally discriminated against her by failing to grant her a pay raise in 1971–72 upon her appointment as an associate professor. The panel found that this loss of increment reduced her salary in subsequent years and awarded her $5,650 in damages. The panel found appellant's exclusion from the editorial board of NOVEL, discussed infra, to be suggestive of discriminatory treatment; it found against appellant on all of her other claims.

ing experience, publication record, service to the "community" (i.e., within the department, the University, and the greater Providence community), and "market factors". These factors included conditions in the academic job market, an applicant's prior salary history, and competing offers from other institutions. The relative significance of all of these considerations varied with each appointment, and individual salaries varied within each department.

## I. Liability for Pre-Act Discrimination

██ Because Title VII did not become applicable to educational institutions until March 24, 1972, see Pub.L.No. 92–261, 86 Stat. 103, we first address Brown's potential liability for any discrimination that appellant may have suffered prior to this date. Generally, the amendments are prospective only, and only independent acts occurring after the effective date are actionable. *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 208 (9th Cir. 1979); *Scammel v. Dallas*, 565 F.2d 955, 956 (5th Cir. 1978) (per curiam); *Faulkner v. Federation of Preschool & Community Educ. Centers, Inc.*, 564 F.2d 327, 328 (9th Cir. 1978); *Cohen v. Illinois Inst. of Tech.*, 524 F.2d 818, 821–22 & n.4 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Weise v. Syracuse Univ.*, 522 F.2d 397, 409 (2d Cir. 1975). Prior to March 24, 1972, therefore, Brown was free, as far as its treatment of appellant was concerned, to discriminate in its employment practices. *Weise v. Syracuse Univ.*, 522 F.2d at 410; *see Hazelwood School Dist. v. United States*, 433 U.S. 299, 309, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *cf. Chisholm v. United States Postal Service*, 516 F.Supp. 810, 877 (W.D.N.C.1980).

██ Evidence of pre-Act violations is relevant, however, to show a pattern of illegal conduct, purpose or motivation with regard to independent violations that occurred after the effective date of the Act. *Hazelwood School Dist. v. United States*, 433 U.S. at 309–10 n.15, 97 S.Ct. at 2742–43 n.15; *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1383 (5th Cir. 1980), *citing United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 438 (5th Cir. 1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972); *cf. Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 540 (5th Cir. 1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981). A discriminatory discharge decision, made prior to the effective date of the Act but implemented post-Act, is actionable. *EEOC v. Tufts Inst. of Learning*, 421 F.Supp. 152, 157 (D.Mass. 1975). Similarly, a decision to hire an individual at a discriminatorily low salary can, upon payment of each subsequent pay check, continue to violate the employee's rights. *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980); *Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851, 857–58 (D.Md.1979); *Corbin v. Pan Amer. World Airways, Inc.*, 432 F.Supp. 939, 944 (N.D. Cal.1977); *see generally Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017–19 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

██ Applying these principles to the case at bar, we conclude that appellant cannot recover damages for any discrimination she might have suffered prior to March 24, 1972. Appellant's right to a remedy is further restricted by the district court's order of March 6, 1978, in the class action suit: "Claimants cannot seek relief under the consent decree for acts which occurred before February 2, 1974 unless the University actively covered up evidence concerning its alleged discriminatory actions." The only claims that are not time-barred as to damages are appellant's allegations that she received a discriminatorily low wage after 1972 as a result of pre-1972 discrimination, and that Brown discriminated against her by failing to "catch-up" her salary between 1972 and 1978. We agree with the district court, however, that a review of the other claims is necessary "to determine whether acts of the University subsequent to the effective date of the statute perpetuate pre-Act discrimination."

## II. Standards of Disparate Treatment Claims

■ The general rules for examining a disparate treatment discrimination claim are often quoted, but they pose "no little difficulty" in their application. *Loeb v. Textron, Inc.*, 600 F.2d at 1011. First, plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. If he or she succeeds, the defendant must articulate a legitimate, non-discriminatory reason for its challenged actions. If defendant does so, plaintiff is then given the opportunity to prove by a preponderance of the evidence that the asserted reason is a mere pretext for unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1980), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Holden v. Commission Against Discrimination of the Commonwealth of Mass.*, 671 F.2d 30, 35–36 (1st Cir. 1982); *T & S Serv. Assoc., Inc. v. Crenson*, 666 F.2d 722, 725–27 (1st Cir. 1981).

■ In meeting appellant's prima facie case, Brown need not prove the absence of a discriminatory motive; it need only articulate a legitimate, nondiscriminatory reason. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), *rev'g*, 569 F.2d 169 (1st Cir. 1978) (*Sweeney I*). The University can accomplish this by introducing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095. The reason proffered is sufficient if it raises a "genuine issue of fact as to whether [Brown] discriminated against the plaintiff." *Id.* at 254–55, 101 S.Ct. at 1054. Brown must

> "clearly set forth, through the introduction of admissible evidence, the reasons for [the employment decision]. The explanation provided must be legally sufficient to justify a judgment for the defendant .... Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions." *Id.* at 255–56, 101 S.Ct. at 1094–95 (footnote omitted).

Brown's explanation of its reasons must be clear and reasonably specific. *Id.* at 258, 101 S.Ct. at 1096, *see Loeb v. Textron, Inc.*, 600 F.2d at 1011–12 n.5.

■ If Brown meets its burden, appellant must, to prevail, prove pretext by showing that the University's proffered reason was not the true reason for the employment decision in question.

> "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either *directly* by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly* by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, *citing McDonnell Douglas Corp. v. Green*, 411 U.S. at 804–05, 93 S.Ct. at 1825 (emphasis added).

The burden of persuasion, therefore, as to the ultimate issue—whether Brown intentionally discriminated against appellant on the basis of sex—remains on appellant at all times. *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *Sweeney II*, 604 F.2d at 108; *Loeb v. Textron, Inc.*, 600 F.2d at 1011. Our standard of review is whether the district court's findings of fact were clearly erroneous or predicated upon an error of law. *Sweeney II*, 604 F.2d at 109 & n.2.

## III. Alleged Evidentiary Errors

Before reviewing the district court's findings, there are two evidentiary matters that

must be discussed. The first is the court's exclusion of the opinions of the hearing panel. Under the terms of the consent decree, a hearing panel was constituted to hear claims of sex discrimination by women receiving notice of the decree. Detailed procedures were established for the processing and proof of claims. Appellant sought to introduce into evidence eight opinions of the hearing panel finding that certain class members had been discriminated against on the basis of sex. Appellant's theory of admissibility is that since Brown did not seek a trial *de novo* in the district court in these eight cases, they became judgments of discrimination against the University, and are valid and binding precedent which do not constitute hearsay. In the alternative, appellant asserts they are admissible as an exception to the hearsay rule under Rule 803(8) of the Federal Rules of Evidence (records of public offices or agencies).

We agree with the district court that hearsay or not, the opinions were not relevant. We note first that a summary report of the hearing panel *was* admitted into evidence. This report shows that of twenty-five claims processed to final decision, the panel found in favor of Brown on sixteen claims and for the respective claimants in nine cases, including that of appellant. Appellant was free to rely on the decisions of the panel, as opposed to its reasoned opinions, to attempt to show a general atmosphere of sex discrimination at Brown. But none of the other successful claimants was in the English Department. Given the uncontradicted testimony of the provost that individual salary and hiring decisions of different departments could not meaningfully be compared, we cannot see how the factual circumstances of successful claimants in other departments are relevant to this case.

Nor do we see any merit in the Rule 803(8) claim. The hearing panel is composed of Brown University faculty members; the panels are not public agencies, and its members are not public officials. Their opinions are therefore not covered by Rule 803(8), and would properly be excluded as hearsay.

The other evidentiary issue arises from the district court's treatment of statistical evidence. During the trial, appellant sought to introduce extensive statistical evidence of alleged university-wide sex discrimination in faculty salaries and hiring. Upon objection by the university, the court stated:

"As I said before and I can only repeat again, I think I have to be very liberal in allowing evidence in. This is the case that is going to set the framework for all other cases of its kind and the format that we'll have to use in the future. Now if I use it in any of these you will have, I will note your exception if I use any of this information. If I do you'll have an automatic exception on the record *and if I don't use it it's tantamount to saying that I didn't think it was relevant,* I didn't think it could be used, therefore sustaining your objection." (emphasis added.)

In discussing the evidence at another juncture, the court had this to say:

"Yes, now you're getting into a whole Title 7 type inquiry and that is another issue that has to be decided. Is that it or do we look at this from department to department in that each department is autonomous, that this is the whole purpose of the hearing panel. This is the whole purpose of an appeal to the court. Not to have a Title 7 hearing but rather to confine it within the four corners of each department."

All of this evidence, which was in the form of exhibits, is part of the record. The court's opinion contains no reference to any of the exhibits or the data. We conclude, therefore, that the district court did not consider this evidence to be relevant in assessing whether Brown's articulated reasons for its actions vis-a-vis appellant were pretexts for unlawful discrimination.

Statistics concerning the general atmosphere of discrimination, although not conclusive, are usually relevant to show that the same employer discriminated

against an individual plaintiff. *See, e.g., Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978); *Lynn v. Regents of the University of California,* 656 F.2d 1337, 1342–43 (9th Cir. 1981); *Sweeney II,* 604 F.2d at 113 & n.11. Having reviewed the statistics offered here in the light of the record as a whole, however, we agree that they are not relevant to the particular issue of discrimination raised in this case. First, because appellant has failed to provide statistics as to the number of qualified women in the relevant labor pool, the numerical disparity between men and women at particular job levels at Brown by itself is not probative. *See, e.g., Hazelwood School Dist. v. United States,* 433 U.S. 299, 308 & n.13, 97 S.Ct. 2736, 2741 & n.13, 53 L.Ed.2d 768 (1976); *White v. City of San Diego,* 605 F.2d 455, 460–61 (9th Cir. 1979); *Sweeney I,* 569 F.2d at 178. The statistics, though striking upon first reading, may simply reflect an absence of qualified female applicants, rather than pervasive sex discrimination.

Second, because each department at Brown was relatively autonomous with respect to salary setting, the statistics cannot be utilized to compare appellant's salary and qualifications directly with those of members of other departments. That appellant was paid less than many men of her rank in other departments may be explained by the fact that the English Department as a whole has lower salaries than other departments of the university. There was evidence, for example, that faculty members in the sciences are generally paid more than those in the humanities due to legitimate, non-discriminatory market factors. Given these limitations on the use of the statistical data, we are unable to see their probative value. The district court therefore did not err by failing to discuss the statistics in its opinion.

### IV. Particular Claims of Discrimination

■ Appellant makes a number of specific claims of discrimination. She alleges that her starting salary of $12,000 in 1969–70 as a visiting associate professor was discriminatorily low, that her salary of $13,500 in 1970–71 was still unfairly low, and that Brown's failure to grant her a pay raise in 1971–72 was also sexually biased. The district court found that she stated a prima facie case with respect to each year's salary, but that Brown's salary decisions were actually motivated by non-discriminatory reasons. With respect to her starting salary, the court found that it was $3000 higher than appellant's prior full-time salary, that there was no great demand for scholars in appellant's area of specialization, and that appellant had failed to prove her assertion that pervasive discrimination in the academic world had unjustifiably depressed her prior salary or that such "market factors" had determined her prior salary at Brown. In 1970–71, the court found that appellant had received a substantial 12.5 per cent raise, that her salary of $13,500 was appropriately guided by the $14,000 salary of the professor whom she was temporarily replacing, and that two black male professors received a higher salary because of the high market demand for blacks. Finally, appellant's failure to receive a raise in 1971–72 was explained by the University's financial crunch and by appellant's receipt of a promotion to a tenure-track position and a sizeable raise the prior year; a substantially higher salary for a less qualified male was found to be the result of friendship rather than sex discrimination.[2] In short, the district court concluded that appellant failed to prove that Brown was motivated by sex discrimination in setting her salary. Having reviewed the record, we cannot say that its findings were clearly erroneous.

---

2. Appellant argues that friendship is not a "legitimate" reason for setting salary, and that therefore it does not meet the university's burden of articulating a "legitimate non-discriminatory" reason. It is true that "[t]he more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one." *Loeb v. Textron, Inc.,* 600 F.2d at 1012 n.6. But the crucial question is always "whether the given reason was a pretext for illegal discrimination", not whether it was one "that the judge ... would act on or approve." *Id.*

Appellant also alleges that Brown discriminated against her by failing to "catch up" her salary in the years 1972–78. The "catch up" policy was introduced by the university to eliminate inequities between salaries of longstanding faculty members and recent hirees caused by inflationary market conditions which boosted starting wages. To accomplish this, the English Department chairman recommended a 5.5 per cent annual increase for 1972–78 for all faculty members in the department. Appellant acknowledges, however, that she received raises at approximately the departmental average throughout this period. Moreover, it is uncontested that those faculty members who published—both male and female—received higher raises than those who did not. Finally, the provost testified that "catch up" was just a "general policy" and that it was used only when the faculty member "was performing properly". Given the district court's supportable findings that appellant had failed to publish anything since coming to Brown, and that her "continued scholarship in this period did not remotely approach the achievements of those with whom she would be compared", we conclude that the court committed no error in finding that appellant's failure to receive higher raises during this time was not the result of sex discrimination.[3]

Finally, appellant asserts that the English Department chairman's failure to appoint her to the editorial board of the scholarly journal *NOVEL* in 1970 was discriminatory. The district court found that no new editors were added to the board in 1970, and that a desire to maintain the original composition of the board explained appellant's failure to be appointed. Our review of the evidence indicates otherwise: at least one new editor *was* added to the board. Even assuming that this was an incident of discrimination, however, we do not feel that it justifies a remand here. The action occurred prior to the effective date of Title VII, and was not a continuing violation. The district court justifiably found that appellant was not named to the board after 1970 because her review of manuscripts for the journal had been unsatisfactory. We cannot see how the *NOVEL* exclusion in 1970 could reasonably change the district court's conclusion, after observing all the witnesses and considering carefully all of appellant's claims, that appellant has failed to prove that she was discriminated against after the effective date of Title VII.[4]

*Affirmed.*

---

**3.** Appellant's complaint that two males, Henkle and St. Armand, received retroactive pay increases pursuant to the "catch up" policy is unavailing because she fails to demonstrate that her performance was equally good.

**4.** Although appellant has raised some twenty-three issues on appeal, she has not briefed or argued her claim that Brown discriminated against her in its tenure and promotion decisions. We therefore need not reach these issues.