EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff, Appellee,

v.

D. Justin McCARTHY, et al.,
Defendants, Appellants.

No. 84–1879.

United States Court of Appeals,
First Circuit.

Argued April 2, 1985.

Decided July 10, 1985.

Morris M. Goldings, Boston, Mass., with whom Alan M. Cohen and Mahoney, Hawkes & Goldings, Boston, Mass., were on brief for defendants, appellants.

Jeffrey C. Bannon, Washington, D.C., with whom Johnny J. Butler, Acting Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, and Mark S. Flynn, Washington, D.C., were on brief for plaintiff, appellee.

Debra C. Moll, Betty A. Gittes, Michael F. Merra and Shaevel, Shaevel & Gittes, Boston, Mass., on brief for Mass. Teachers Ass'n and Mass. State College Ass'n, amici curiae.

Before BREYER, Circuit Judge, RO-SENN,* Senior Circuit Judge, and TORRU-ELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

This case is before us on appeal by defendants, the President of Framingham State College, the Board of Trustees of State Colleges and the board members, from a judgment of the United States District Court for the District of Massachusetts, 578 F.Supp. 45 (D.C.Mass.1983), finding willful violations of the Equal Pay Act, 29 U.S.C. § 206(d) (the Act), in that since August 4, 1973, female faculty members at the College have been paid less than their male collegues for equal work.

In the first instance, defendants claimed that the Act was unconstitutional. Failing to prevail on that point, they denied the violation. Prior to trial, however, the parties narrowed the issues significantly by stipulating that:

male and female faculty members at Framingham State College perform work on the jobs the performance of which requires equal effort and responsibility and which are performed under similar working conditions.

With respect to skill, the stipulation provided that:

Plaintiffs and Defendants do not stipulate that the work performed by the male and female faculty members require equal skill, where skill includes considerations of experience, training, and education.

At trial, the Equal Employment Opportunity Commission (EEOC), plaintiff in the case,[1] introduced the testimony of labor economist Dr. Stephen Michaelson, who presented his study of faculty salaries and qualifications at Framingham State College for the period 1969 to 1977. Dr. Michaelson analyzed data provided by the defendants through discovery which included information on the faculty members' education, prior experience, department, seniority, faculty rank and salary at Framingham. With this data, Dr. Michaelson performed a multiple regression analysis to determine whether males and females, who were equal in faculty rank, experience, education, and seniority, were paid the same salary. The witness determined that, while males and females of equal qualifications were paid the same upon being hired, the salaries of the men increased at a greater rate as seniority accrued. The trial court gave great weight to Dr. Michaelson's findings and ruled in favor of the EEOC. For the reasons stated below, we affirm the district court's decision.

I

Appellants initially argue, as they did below, that the 29 U.S.C. § 206(d)[2] of the

---

* Of the Third Circuit, sitting by designation.

1. This action was originally brought by the Secretary of Labor under the Fair Labor Standards Act, Sections 206(d) and 215(a)(2) (29 U.S.C. § 201 et seq.). The Presidential Reorganization Plan No. 1 of 1978, 92 Stat. 3781, transferred jurisdiction for enforcement of the Equal Pay Act as of July 1, 1979 to the EEOC.

2. In essence, 29 U.S.C. § 206(d)(1) provides that no employer "... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the oppo-

Act, as applied to them, violates the Fifth Amendment of the United States Constitution, because it fails to "clearly identify what an employer in an educational setting must do to avoid EPA liability." Appellant asserts that because the interpretive regulations relating to the Act, those found in 29 C.F.R., Part 800, were not revised after the extension of the Act to educational institutions in 1972, the statute is rendered unconstitutionally vague.

 Our review of both the statute and the regulation reveals that neither is industry specific; unequal pay for equal work is generally prohibited regardless of the workplace or industry. Additionally, appellants have failed to present, nor have we been able to find, any evidence or authority to support their contention to the effect that educational institutions should be dealt with under the law in a special manner not accorded any other employer classification. Although appellants are correct in stating that due process requires that a statute clearly define what conduct is prohibited so that those covered by its provisions may be adequately apprised of its meaning, (see di leo v. Greenfield, 541 F.2d 949 (2nd Cir.1976); Smith v. Goguen, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); Grayned v. City of Rockford, 408 U.S. 104, 108–9, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)), we find nothing in the law which mandates the promulgation of guidelines regarding the educational employment setting. Nor does the failure of the Secretary of Labor to promulgate these industry specific regulations vis-a-vis educational employment make a heretofore constitutionally clear statute [3] unconstitutionally vague by virtue of its present coverage of educational institutions.

## II

Appellants next contest the court's findings of fact, alleging that it erroneously admitted irrelevant evidence, thus making the EEOC's statistical conclusions inaccurate.

 Appellants take issue with the inclusion of data for years prior to 1974 and the inclusion of professors hired prior to that date.[4] We do not agree with appellants argument. Employees are protected by the EPA regardless of when they were hired if there is pay discrimination against them within the operative statute of limitations. While the Supreme Court has stated that the present effects of past discrimination are not actionable, see United Airlines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the critical question is whether any present violation exists (id. at 558, 97 S.Ct. at 1889) or whether we have a situation which involves a continuing violation. This court has held that "a decision to hire an individual at a discriminatory low salary can, upon payment of each subsequent paycheck, continue to violate the employee's rights." Lamphere v. Brown

site sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

3. We do not find, nor do appellants cite, any cases in which the Equal Pay Act, in effect now for over twenty years, has been challenged as unconstitutionally vague. This statute has been applied by the Supreme Court on various occasions without being challenged as constitutionally infirm, see, e.g., Washington County v. Gunther, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), Corning Glass Works v. Brennan, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Likewise, various circuit courts have applied this statute to educational institutions without the difficulties alleged by appellants. See, e.g., Hein v. Oregon College of Education, 718 F.2d

910 (9th Cir.1983); Orahood v. Board of Trustees of the University of Arkansas, 645 F.2d 651 (8th Cir.1981); Lamphere v. Brown University, 685 F.2d 743 (1st Cir.1982); Katz v. School District of Clayton, Missouri, 557 F.2d 153 (8th Cir.1977).

4. Appellant has, apparently, selected that date because under the statute of limitation set forth in The Fair Labor Standards Act 29 U.S.C. § 255(a) the action must be commenced within two years after the cause of action accrued, except where there is a willful violation, in which case the limit is three years. As previously mentioned, the complaint was filed in 1976, which would make 1974 the limit for compensation, in the face of a violation not characterized as willful.

**4**

*University,* 685 F.2d 743, 747 (1st Cir. 1982); *Jenkins v. Home Ins. Co.,* 635 F.2d 310, 312 (4th Cir.1980). Thus, professors hired prior to the date for which back wages due may be collected, or prior to protection of the statute, may be legitimately included when they have continued working during an actionable period. Admitted statistical evidence relating to the years 1969 through 1972 was relevant to historical treatment of salaries at the college, as well as helpful in determining the trend of increasing disparity with years of employment. *See Lamphere, supra,* at 747. The evidence specifically related to the disparity for the years 1974 through 1977 supports the findings of the court, so that even if, *arguendo,* the admission of the earlier data was in error, it would be harmless error.

Appellants make much ado about alleged flaws in Dr. Michaelson's statistical analysis. To counter his testimony, they presented their own statistician, Dr. Richard Freeman. Dr. Freeman made a similar analysis, but only for the year 1978. His analysis did not show the statistical significance which Dr. Michaelson encountered, although he did find that women were paid less than men. As pointed out by the district court in its opinion:

> [Dr. Michaelson] was working from data provided by the defendants, whose own expert admitted that he could find no fault with Dr. Michaelson's results, given the data that Dr. Michaelson used ... Likewise, although defendants contend that Dr. Michaelson did not adequately rate prior experience, Dr. Freeman testified that he could not identify any single factor other than "data" as an explanation for their differing results ... [t]he fact remains that defendant's expert was unable to weaken the compelling and convincing testimony of plaintiffs expert and only strengthens that testimony by stating that he could find no fault with it.

Our review of the record leaves us with the same impression. The credibility given to the EEOC's expert was within the trial court's scope of discretion. *See U.S. v. Hensel,* 699 F.2d 18 (1st Cir.1983).

## III

In the action below, defendants claimed that a *prima facie* case had not been established because Dr. Michaelson did not consider ability as a factor when making his analysis. Appellants argue that by excluding ability from consideration, the district court reduced the plaintiff's burden of proof. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) ("The plaintiff has the burden of proof to show that an employer pays different wages to employees of the opposite sexes for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions."). In both their post-trial submissions and on this appeal the parties disagree as to whether equal ability was incorporated into their stipulation. As mentioned before, the crucial element of the stipulation stating that equal skill was not stipulated as a requirement for the work performed, included only the considerations of experience, training and education.

The district court, finding that the administrative regulation *defines* "skill" within the meaning of the Equal Pay Act as "includ[ing] consideration of such factors as experience, training, education, *and ability,*" 29 C.F.R. § 800.125 (emphasis added by district court), concluded that equal ability had been stipulated by inference. That is, because it was not stipulated that ability was a contested issue, the court below concluded that it was stipulated as being equal.

Both, the district court and the parties, premise their reasoning on the proposition that the definition of skill in 29 C.F.R. § 800.125 contains four immutable elements: experience, training, education, and ability. Our perusal of the passage of this regulation leads us to a different conclusion. The wording to the effect that "skill includes consideration of *factors such as* experience, training, education, and ability" is exemplary in nature, being neither mandatory nor exclusionary.

The regulation requires consideration of these types of factors. The stipulation's purpose was to identify uncontested issues and enumerate those matters to be decided by the court. Therefore, it was not unreasonable for the court to find, in light of its absence from the agreement, that ability was a matter for which affirmative evidence need not be presented.[5]

## IV

Appellants contest the extension of the statute of limitations pursuant to 29 U.S.C. § 255(a),[6] challenging as erroneous the court's conclusion that the defendants willfully violated the Act. The standard in this Circuit for determining willfulness under 29 U.S.C. § 255(a) is well settled: The test is "whether the employer knew or had reason to know that the [Fair Labor Standards Act] was applicable to its employment practices. (Citations omitted). Neither bad faith nor knowledge that a particular practice violates the Act is required." *Marshall v. Erin Food Services, Inc.*, 672 F.2d 229, 231 (1st Cir.1982).

Appellants argue that this position is rejected in the Supreme Court's recent decision in *Trans World Airlines, Inc. v. Thurston*, —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). As appellants themselves acknowledge, however, the Supreme Court's analysis purposely avoided deciding what the proper "willfulness" standard is in cases involving the statute of limitations. That court stated only that "[e]ven if the [standard enunciated in Erin Food Service] were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages." *Thurston, supra* at 625. The Supreme Court then made the following observation in a footnote: "The Courts of Appeals are divided over whether Congress intended the willfulness standard to be identical for determining liquidated damages and for purposes of the limitations period." (Citations omitted). *Id.* at n. 21. Likewise, appellant's arguments regarding the legislative history of congressional intent for liquidated damages under the Age Discrimination in Employment Act do not persuade us to reject this court's test for a statute of limitations, especially where the Supreme Court appears as yet to be undecided on this issue.

*Affirmed.*

---

5. For that matter, the evaluation of ability is a somewhat grey area. Webster's Third New International Dictionary, Unabridged, 1981 edition defines ability as both "skill" and "aptitude." Coming full circle with ability being synonymous to skill, we looked at "aptitude" which, within the same definition of "skill," is defined as "natural ability." While we can certainly understand quantitative or qualitative measurements of education, training and experience, we find that the measurement of the natural ability to teach is a more elusive, somewhat nebulous pursuit which could, therefore, have been reasonably excluded by the parties.

6. Section 255(a) provides that "... the cause of action ... shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action."