779 F.2d 441
 39 Fair Empl.Prac.Cas. 1379,
27 Wage & Hour Cas. (BN 977,
38 Empl. Prac. Dec. P 35,807,
103 Lab.Cas. P 34,722, 29 Ed. Law Rep. 66
 Ruth B. ANDERSON, Appellant,
v.
UNIVERSITY OF NORTHERN IOWA, Board of Regents, James D.
Martin, Vice President and Provost, Robert E.
Morin, Dean of College of Social and
Behavior Sciences, Appellees.
 No. 85-1157.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 11, 1985.
Decided Dec. 12, 1985.
 
 Robert Wright, Jr., Des Moines, Iowa, for appellant.
 C.A. Frerichs, Waterloo, Iowa, for appellees.
 Before ROSS, McMILLIAN, and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Ruth B. Anderson, an associate professor of social work at the University of Northern Iowa ("UNI"), appeals the decision of the District Court[1] dismissing after trial her lawsuit against the university and various of its officials. The court held that UNI's failure to promote the plaintiff to full professor was not based on plaintiff's race, sex, or age and therefore did not violate Title VII of the Civil Rights Act of 1964; the court also dismissed Professor Anderson's claim that she received less in salary than male colleagues for similar work in violation of the Equal Pay provision of the Fair Labor Standards Act of 1938. Because we find the District Court's Title VII ruling not clearly erroneous, and the plaintiff's Equal Pay Act claim barred by her participation in the 1977 settlement of a class action against UNI, we affirm the decision of the District Court.
 
 I.
 
 2
 The plaintiff, a 63-year-old black woman, was first employed at UNI in 1969, first as an assistant professor in the College of Social and Behavioral Sciences. In 1973 she was promoted to associate professor. She received her undergraduate degree from the University of California at Berkeley and her Master's in Social Work (MSW) from Columbia University. According to the District Court's findings of fact, she is "one of the founders of the social work program at UNI. Her ability as a teacher is beyond question and she has consistently received favorable evaluations from both students and faculty." Anderson v. University of Northern Iowa, No. C83-2069 (N.D.Iowa, Dec. 31, 1984), slip op. 2. Professor Anderson has published one scholarly article; at the time of trial, she had two others under submission and apparently accepted for publication and had completed two chapters of her autobiography.
 
 
 3
 Plaintiff's request was denied as premature when she first applied for promotion to full professor in 1977-78. She reapplied in the next academic year; although she had the support of the head of her department and the professional assessment committee (PAC), the administration turned down the request "based on plaintiff's lack of scholarly productivity," id. at 3. She filed a grievance, and the administration decision was upheld. In 1982, when she renewed her promotion request with the support of the department head and the PAC, the administration's negative response was based on the same reason. This lawsuit was filed in 1983.
 
 
 4
 At trial, defendants argued that plaintiff was not made a full professor because she did not meet the institution's scholarly standards for such a position. UNI's written guidelines for faculty promotion stress excellence in teaching, scholarship, and professional services. In addition, the guidelines state that a minimum level of accomplishment is required in all three categories; superiority in one or two cannot overcome deficiency in a third. Defendant administrators testified that Professor Anderson had a lower scholarly output than anyone else on the social and behavioral sciences faculty and that if other associate professors "[w]ere to see a promotion to full Professor with a record of a single publication of three or four pages, the effect would be devastating." Tr. 340.
 
 
 5
 Although the District Court found that plaintiff made out a prima facie case of disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., the defendants negated that presumption by presenting sufficient evidence that the promotion was denied for a nondiscriminatory business reason, the plaintiff's inadequate scholarly achievement. The District Court then found that plaintiff had not demonstrated "that the articulated reason [was] a pretext for a discriminatory decision," Burrows v. Chemed Corp., 743 F.2d 612, 615 (8th Cir.1984).
 
 
 6
 This finding is not clearly erroneous. Fed.R.Civ.P. 52(a). Scholarly achievement is clearly recognized as a nondiscriminatory reason for personnel action in academic settings, Lynn v. Regents of the University of California, 656 F.2d 1337 (9th Cir.1981), cert. denied, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); Campbell v. Ramsay, 484 F.Supp. 190 (E.D.Ark.), aff'd, 631 F.2d 597 (8th Cir.1980). There was debate at trial as to whether Professor Anderson's lack of a doctorate was the primary reason for the promotion denial, and whether UNI officials were bound by agreements with accreditation authorities to consider the MSW the terminal degree for social-work faculty. This dispute is irrelevant, because the magistrate specifically found that even with a doctoral degree, Professor Anderson's scanty publication record would have prevented her promotion to full professor.
 
 
 7
 Plaintiff attempts to characterize scholarship as a pretext for discrimination by noting that UNI has not appointed a black full professor in the last decade (if ever), and that of the seven black UNI faculty members (in a total faculty of 515), five were up for personnel action in 1982 and four received negative decisions. While it found the statistics "troublesome," slip op. 11, the District Court ultimately accorded them minimal weight. It did not clearly err in doing so. As authority for the use of statistical evidence in Title VII actions, plaintiff cites McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, that opinion also states that statistics on the composition of a workforce, "while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire," 411 U.S. at 805 n. 19, or, by analogy, for a failure to promote.
 
 
 8
 Accordingly, the decision of the magistrate dismissing the Title VII count of plaintiff's complaint is affirmed.
 
 II.
 
 9
 Plaintiff's second claim is that UNI paid her less than it did her male colleagues for the same or similar work, in violation of the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1); in particular, she cites the approximately $2,000 difference in annual salary that has existed between her and Dr. Mitchell Greene, another member of the social-work faculty. The District Court found that plaintiff failed to establish a claim under the Equal Pay Act, which forbids such wage discrimination except when based on seniority, merit, production, or "any other factor other than sex," 29 U.S.C. Sec. 206(d)(1). The District Court stated that plaintiff, who started at a lower salary than Dr. Greene, has been paid since 1977 according to a collective-bargaining agreement, and that under the agreement individual adjustments may be made only "upon scholarly achievement and community service," slip op. 12.
 
 
 10
 In general, the mere existence of a wage agreement cannot be considered a "factor other than sex" if the contract perpetuates pay differentials which would themselves violate the Act. And plaintiff correctly argues that in such a case, the defendant would be required to show a legitimate business reason for the initial discrepancy.[2] However, this case is different in that plaintiff participated in the 1977 settlement of an Equal Pay Act suit against the university. As part of the settlement, plaintiff waived claims covered by the suit, which had asked for damages for past violations and injunctive relief from further Equal Pay Act violations. The salary gap between Professor Anderson and Dr. Greene has existed since he was hired in 1972, and any claim she might have based on that differential was resolved in 1977.[3] The difference in their salaries has remained substantially the same since that time.
 
 
 11
 We hold, therefore, that the dismissal of Professor Anderson's second count was also proper and thus the District Court's decision is
 
 
 12
 Affirmed.
 
 
 
 [1]
 The Hon. James D. Hodges, Jr., United States Magistrate for the Northern District of Iowa, tried the case by agreement of the parties under 28 U.S.C. Sec. 636(c)(1)
 
 
 [2]
 No findings were made on this question by the District Court, and we make none now. However, there was evidence to suggest that Dr. Greene, who holds a Ph.D. in education, received a higher starting salary than plaintiff because of the premium commanded in the academic market by his more extensive credentials. Tr. 388, 420
 
 
 [3]
 Discretionary salary increases reflecting scholarship and community service have narrowed the initial salary gap between Professor Anderson and Dr. Greene