**Sandra S. DEAN, Plaintiff,**

v.

**UNITED FOOD STORES, INC., d/b/a 7–2–11 Food Stores, Inc., and Bonnie Frazer, Defendants.**

**Civ. No. 89–1036–JB.**

United States District Court, D. New Mexico.

April 24, 1991.

---

Elizabeth Simpson, Tom Logan, Tomita & Simpson, P.C., Albuquerque, N.M., for plaintiff.

Donald Echols, Connie Martin, Tansey, Rosebrough, Gerding & Strother, P.C., Farmington, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER came before the Court in a non-jury trial on April 3 and 4, 1991, and the Court considered the evidence, the relevant law, and the parties' requested findings and conclusions. This Memorandum Opinion and Order shall constitute the Courts' findings of fact and conclusions of law.

## JURISDICTION

The Court first finds that it has jurisdiction over the parties and the subject matter of this action. Specifically, Plaintiff Sandra Dean brought this action on September 15, 1989 alleging unequal pay in violation of the Equal Pay Act which is codified in 29 U.S.C. § 206(d)(1) as part of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Plaintiff is now, and at all pertinent times has been, a resident of the state of New Mexico. Defendant United Food Stores, Inc., d/b/a 7-2-11 Food Stores, Inc. ("United Food Stores"), is, and at all pertinent times has been, a New Mexico corporation which has its office, its principal place of business, and four of its thirty-four convenience stores in Farmington, New Mexico. Defendant Bonnie Frazer, President and majority stockholder of United Food Stores, is also, and at all pertinent times has been, a resident of New Mexico.

The central controversy at trial was whether Sandra Dean and Victor Dean performed equal work requiring equal skill, effort and responsibility.

## FACTS

A review of United Food Stores' hiring policies provides insight to the application of the Equal Pay Act to the facts of this case. At one time, United Food Stores hired only male managers to operate its stores. Often, the wives of store managers helped run the store. Consequently, United Food Stores began to pay the wives a minimum wage. This arrangement developed into United Food Stores' current policy of exclusively hiring husband and wife management teams to manage its stores.

Under this policy, the management team is responsible for staffing the store for all the hours the store is open. *See* Managers' Agreement p. 1 (Feb. 15, 1986). Although little direction is given to the management team regarding work schedules or duty assignments, a member of the management team is required to be present during the week from opening until at least 3:00 p.m. United Food Stores expects the husband to open the store to accept deliveries. Essentially, however, the management team is free to delegate the management duties amongst themselves.

According to Derrell Pitts, the general manager of United Food Stores, the husbands and wives of each management team are considered to be "co-managers." However, United Food Stores pays the husband on a commission basis and pays the wife a minimal salary to avoid violating the minimum wage laws. The wife's salary and salaries paid to other store employees are deducted from the husband's commissions. As such, any attempt to equalize the pay between members of the management team necessitates reducing the husband's pay. Additionally, the husband and the wife are permitted one week paid vacation. *See* Managers' Agreement p. 2 (Feb. 15, 1986). Again, however, the husband's vacation pay is $346.50 (77 hours at $4.50 per hour) while the wife's vacation pay is $150.00 (40 hours at $3.75 per hour). *Id.* Mr. Pitts also testified that he was aware

of the requirements of the Equal Pay Act as early as 1986.

Since husband and wife are hired as a team, if one member of the management team quits, the other is terminated. Similarly, if the husband and wife get a divorce, both lose their jobs. Also, neither can have outside employment.

In 1974, United Food Stores first hired Plaintiff Sandra Dean and her husband, Victor Dean, as a management team. In 1975, Sandra and Victor Dean stopped working for United Food Stores. In October 1979, United Food Stores re-employed Sandra and Victor Dean as a husband and wife management team under the same terms of their previous employment.

■ In July 1980, the Deans transferred to Store No. 23, in Farmington, New Mexico. On February 15, 1986, Sandra and Victor Dean were required to execute a document entitled "Manager's Agreement" which, for the most part, memorialized existing terms and conditions of employment.[1]

Throughout their employment, Sandra and Victor Dean operated the store as a management team and equally divided the time required to manage the store. Although they were not required to keep a record of hours worked, the evidence revealed that, on the average, Sandra Dean worked 6½ hours per day, while Victor Dean worked 9½ hours. Typically, Victor Dean would work from 6:00 a.m. to 3:00 p.m. weekdays, but his quitting time varied. Sandra Dean would work from between 8:30 and 9:00 a.m. until between 3:00 and 3:30 p.m. weekdays. Although Victor Dean normally came into the store earlier than Sandra Dean, he went home for lunch two to four times a week and, for a substantial part of each year, left the store in early afternoon to coach in various youth sports programs. Sandra Dean usually covered during Victor Dean's absences until the evening shift personnel arrived. On weekends, either Sandra or Victor Dean would assist a cashier who would usually operate the store. There never was a problem with staffing at Store No. 23.

Similarly, Sandra and Victor Dean equally divided the managerial responsibilities for operating the store. *See* Managers' Agreement p. 1 (Feb. 15, 1986). Sandra Dean not only assisted Victor Dean in preparing bank deposits and stocking the store, she was primarily responsible for the following duties: (a) all personnel matters including hiring, firing, training and discipline; (b) collection of bad checks, including dealing with police and district attorneys for prosecution, and appearances in court; (c) video rentals, including prosecutions arising from unreturned movies; (d) preparing candy, meat, dairy and produce orders; (e) preparing work schedules and bimonthly payroll reports; and (f) processing all pay raise requests and evaluating job performances. Victor Dean was primarily responsible for gas deliveries, grocery deliveries and general maintenance. During the six-month period prior to July 1989, however, Sandra Dean admitted she was not performing equal tasks as Victor Dean and also worked fewer hours because she was unhappy with her pay.

Victor Dean was paid a commission based on the store's sales while Sandra Dean was paid $300 every two weeks. Sandra Dean requested of Defendants that the commission paid to Victor Dean be divided equally between the two but this request was refused. Sandra Dean requested a pay raise, with the approval of Victor Dean, but this was also refused. Because any raise to Sandra Dean would be deducted from Victor Dean's commission check, there would have been no real economic benefit to the couple if Sandra Dean's salary was increased.

Upon her return from vacation in August 1989, Sandra Dean informed Derrell Pitts, the general manager, that she could not continue working under the above-mentioned disparate salary arrangement. However, Mr. Pitts informed Sandra Dean there would be no change. In August

---

1. A person is not precluded from bringing a claim under the Equal Pay Act because he or she has agreed by contract to a certain level of pay. *Anderson v. University of Northern Iowa*, 779 F.2d 441, 444 (8th Cir.1985).

1989, Sandra Dean quit and, as a result, United Food Stores terminated Victor Dean.

From the period of September 15, 1986, through September 15, 1987, Sandra Dean received $6,725.00 in salary payments, and Victor Dean received $23,626.82 in commissions for a difference of $16,901.82. From the period of September 15, 1987, through September 15, 1989, Sandra Dean received $14,604.31 in salary payments, and Victor Dean received $62,235.25 in commissions for a difference of $47,630.94. In accordance with the Equal Pay Act, Sandra Dean now seeks the accumulated difference between her salary and the commissions paid to Victor Dean, the male employee.

## LAW

■ The Equal Pay Act of 1963 (EPA)[2], 29 U.S.C. § 206(d)(1), commands that "equal work will be rewarded by equal wages," regardless of sex. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting S.Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)). "Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' " *Id.* The EPA is broadly remedial and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve. *Id.* at 208, 94 S.Ct. at 2334.

**2.** More specifically, the EPA provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed un-

■ In order to establish a violation of the EPA, Plaintiff has the burden to prove that the employer pays unequal wages for work that is substantially equal in terms of "skill, effort, and responsibility, and which [is] performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see Brennan*, 417 U.S. at 195, 94 S.Ct. at 2228; *EEOC v. Central Kansas Medical Center*, 705 F.2d 1270, 1272 (10th Cir.1983). Determining whether two jobs are substantially equal "requires a practical judgment on the basis of all the facts and circumstances of a particular case.... In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute." *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981); *see also* 29 C.F.R. §§ 1620.13–.17 (1987). Actual job requirements and performance are the decisive factors in determining whether the jobs are substantially equal; job descriptions or titles are of little value. *See Central Kansas*, 705 F.2d at 1273; *see also* 29 C.F.R. §§ 1620.13–.17. Once Plaintiff establishes a *prima facie* case of unequal pay for equal work, it then becomes Defendants' burden to show that the pay differential was justified by one of the four exceptions of the EPA: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

## ANALYSIS

■ Comparing the actual job requirements of Sandra Dean's job and her performance with that of Victor Dean, the Court is convinced that Sandra Dean per-

der similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
29 U.S.C. § 206(d)(1).

formed substantially equivalent work to that of Victor Dean within the meaning of the Equal Pay Act from the period September 15, 1986, through January 15, 1989. While the actual duties performed by Sandra and Victor Dean were not identical, each performed an equal share of the aggregate duties and responsibilities required to manage the store properly. Although Victor Dean was primarily responsible for the physical work, *i.e.*, gas deliveries, grocery deliveries and general maintenance, Sandra Dean was primarily responsible for *all* personnel matters, collection of bad checks, video rentals, and preparing candy, meat, dairy and produce orders. "Jobs may be equal even though one sex is given extra duties if the other sex also performs extra duties of equal skill, effort and responsibility." *Central Kansas*, 705 F.2d at 1273; *see also* 29 C.F.R. § 1620.20; *Brennan v. South Davis Community Hospital*, 538 F.2d 859, 862 (10th Cir.1976). The evidence presented at trial established that both Sandra Dean's job and Victor Dean's job were substantially equal in skill, effort and responsibility.

Defendants' reliance on Sandra Dean's absentee record during the years 1987, 1988 and 1989 to establish that she did not perform equal work was unpersuasive. Such evidence consisted of a review of the daily report sheets and vendor invoice sheets which allegedly revealed the persons working from opening to closing. This evidence was of little probative value because of the following discrepancies: (a) when a cashier was employed weekdays, Defendants *assumed* Sandra Dean did not work but *assumed* Victor Dean did work; (b) Defendants *assumed* that Sandra Dean did not work on weekends merely because the records reflected Victor Dean did work on weekends; and (c) on days that Defendants contend Sandra Dean did not work, other documents reflect she in fact had worked. In fact, Harry Akers, the supervisor of Store No. 23, visited the store on a daily basis, primarily to see if Sandra Dean was present, and found she was in fact present a majority of the time before 3:00 PM.

■ Having failed to convince the Court that Sandra and Victor Dean did *not* perform equal work, Defendants try to convince the Court that there was, in fact, no wage rate differential. In support of this position, Defendants make the following arguments: first, under New Mexico community property law, half of a husband's income is the property of his wife; and second, Sandra and Victor Dean were a single "economic unit"—Victor Dean's salary would be decreased by any raise in Sandra Dean's salary—therefore, their combined wages were constant. The Court is not convinced by either argument.

The most fundamental reason for rejecting these two arguments is that they both rely on the archaic premise that it is permissible to pay a husband for his wife's labor. To rule otherwise would be tantamount to fashioning an impermissible marriage exception to the EPA. The EPA protects all women regardless of their relationship to their male co-workers. Otherwise, an employer could get away with paying a female worker less for the same job as a male worker simply by hiring husbands and wives to work together. A woman does not lose her right to equal pay for equal work merely because the male co-worker is her husband and is allegedly receiving pay for the labor of both of them. To permit United Food Stores to escape its obligation under the EPA by permitting it to impute money paid to the husband as income to the wife for purposes of determining equality of pay "would frustrate, not serve, Congress' ends." *Brennan*, 417 U.S. at 208, 94 S.Ct. at 2234.

Furthermore, New Mexico's community property law only considers a spouse's income as property of the other spouse for the purpose of distributing assets in the case of a divorce or legal separation, *see* §§ 40–3–1 to 40–3–17 NMSA (1989 Repl.), not to determine the equality of wages under the EPA. Consistent with this reasoning is the fact that half of a husband's salary is not attributed to his wife for the purposes of determining his wife's social security, workers compensation, or unemployment benefits.

Additionally, Defendants' single economic unit theory not only violates the EPA on its face, but also inherently undermines the purpose of the statute. First, the EPA expressly prohibits an employer from reducing the wage rate of any employee in order to comply with the provisions of the EPA. *See* 29 U.S.C. § 206(d)(1). Also, reducing the male co-worker's salary by an amount equivalent to any raise in the female co-worker's salary perpetuates a system whereby the female co-worker will continue to receive an inferior salary. Once again, in the case at bar, the fact that the female and male co-workers are married is irrelevant for purposes of the EPA.

Finally, Defendants presented no evidence whatsoever that the pay differential was justified. Accordingly, Defendants failed to show that the difference in pay between Sandra and Victor Dean was by reason of one of the above-mentioned four exceptions.

## REMEDY

■ "Congress enacted the Equal Pay Act '[r]ecognizing the weaker bargaining position of many women and believing that discrimination in wage rates represented unfair employer exploitation of this source of cheap labor.'" *Brennan*, 417 U.S. at 206, 94 S.Ct. at 2233 (quoting *Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir.1973), *aff'd, Brennan*, 417 U.S. 188, 94 S.Ct. 2223). To remedy this economic exploitation of women, the Act requires that " '[t]he lower wage rate must be increased to the level of the higher.'" *Id.* 417 U.S. at 207, 94 S.Ct. at 2234 (quoting H.R.Rep. No. 309, 88th Cong., 1st Sess., 3 (1963), U.S.Code Cong. & Admin.News 1963, pp. 687, 688); *see also* 29 U.S.C. § 206(d)(1); 29 C.F.R. §§ 1620.12(b), 1620.-25. Raising a woman's depressed wages is not only a matter of simple justice to the female employees themselves, but also an attempt to "overcome the age-old belief in woman's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it." *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029 (6th Cir.1983),

*cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). The penalties imposed for violating the EPA should be consistent with these above-mentioned purposes which Congress sought to achieve. *See Brennan*, 417 U.S. at 208, 94 S.Ct. at 2234.

Under title 29 U.S.C. § 255 the Court may award back pay for up to three years if the violation of the EPA was willful. *See also* 29 C.F.R. § 1620.33(b). Defendants knew they were legally required to equally pay male and female employees performing equivalent work. The salary paid to Victor Dean was a manager's salary. The salary paid to Sandra Dean was a cashier/clerk's salary. The fact of the matter is that Defendants hired and received the services of two managers—one male and one female—while paying only the male employee a manager's salary. This Court finds that Defendants acted wilfully in paying Sandra Dean less than Victor Dean. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"). Therefore, Defendants are required to pay back pay for a period of three years. However, since Sandra Dean did not perform equal work with Victor Dean after January 15, 1989, the difference between their pay of $64,532.76 for three years must be prorated to exclude the period January 15, 1989, to September 15, 1989. Accordingly, the Court awards Sandra Dean $16,901.82 for the period September 15, 1986, to September 15, 1987; $23,815.47 for the period September 15, 1987, to September 15, 1988; and $7,938.49 for the period September 15, 1988, to January 15, 1989, for a total of $48,655.78.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of Plaintiff Sandra Dean for a total amount of $48,655.78.