Schroeder v. Sager Elec. Supply      CV-95-181-SD 10/08/97

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>Mary-Ann Schroeder</u>

   v.                                    Civil No. 95-181-SD

<u>Sager Electrical Supply Company, Inc.</u>


**O R D E R**


Plaintiff Mary-Ann Schroeder brought this case by an initial complaint alleging that defendant Sager Electrical Supply Company, Inc., denied her promotions and then constructively discharged her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u> The court granted defendant's motion for summary judgment on plaintiff's discriminatory promotion claim and granted plaintiff leave to amend her claim by adding an Equal Pay Act claim. <u>See</u> Order of October 28, 1996. The court also granted defendant's second motion for summary judgment on plaintiff's constructive discharge claim, but denied summary judgment as to plaintiff's Equal Pay Act claim.

Now before the court are the following motions: 1) Sager's motion for summary judgment asking the court to rule that the applicable statute of limitations bars Schroeder's claims for damages under the Equal Pay Act, 29 U.S.C. § 255 (1994); 2)

defendant's motion in limine to exclude evidence of certain alleged improper gender references; 3) plaintiff's motion in limine to exclude the testimony of defendant's expert; 4) defendant's motion for a protective order pursuant to Rule 26(c)(1), Fed. R. Civ. P.; and 5) plaintiff's motion to compel defendant's answers to her third and fourth sets of interrogatories.

## Background

Schroeder worked as a salesperson in Sager's Salem, New Hampshire, branch from April 30, 1984 until she resigned on August 22, 1994. Sager originally hired Schroeder as an inside salesperson and promoted her to outside sales after she had been with the company for six months. In 1988 Sager hired a man, who Schroeder believed was less qualified than her, for the position of outside sales manager. Mr. Murphy, one of Schroeder's supervisors, told her that she did not get the job because she recently had married a man with children and "she would want to spend more time at home." Complaint ¶ 11. Schroeder also claims that Sager promoted less qualified men ahead of her in 1990 and again in 1994.

Schroeder complains that the man whom Sager promoted ahead of her in 1994 reassigned two of her largest accounts. When one

2

of Schroeder's former customers complained about Schroeder's being removed from her account, Mr. Norton called the customer a lesbian. Schroeder also alleges that in 1994 Mr. Gabriel, a manager at Sager, criticized her appearance, while supervisors at Sager did not criticize men similarly.

In addition, Schroeder alleges that Sager has paid her less than men engaged in the same work. Specifically, Sager paid some male salespersons in Sager's Massachusetts and Connecticut branches more than it paid Schroeder. Schroeder alleges that Sager should have paid her at the same rate as these employees because she and they were performing substantially equal work in the same establishment.

In addition to Schroeder's complaints about Sager, another employee, Kelly Smith, has alleged that Sager discriminated against her on the basis of sex. Kelly Smith worked in Sager's Hingham, Massachusetts, office from 1989 until 1995, when she was constructively discharged after Sager failed several times to promote her and demoted her after discovering that she was pregnant.

On October 7, 1994, Schroeder filed a Charge of Discrimination with the New Hampshire Human Rights Commission and the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Notice of Right to Sue on January 12, 1995. Schroeder

initiated this action by filing a complaint in this court alleging violation of Title VII on April 6, 1995. In a pretrial order dated June 6, 1995, the court stated that Schroeder would file a motion for leave to amend adding a claim under the EPA. Although Schroeder discussed the prospect of adding an EPA claim in 1995, she did not request leave to amend until September 20, 1996. On October 28, 1996, this court granted Schroeder leave to amend her original complaint to add an EPA claim.

## Discussion

### 1. Defendant's Motion for Summary Judgment

Sager moves for summary judgment on Schroeder's one remaining EPA claim based on the contention that the applicable statute of limitations bars her from recovery. The statute of limitations provides that a plaintiff can bring a claim within two years of the alleged violation, or three years if the violation was willful. See 29 U.S.C. § 255 (1994). Sager contends that because Schroeder moved to amend her complaint on September 20, 1996, more than two years after she had resigned from Sager, she cannot collect damages. Sager asks the court to enter summary judgment against the plaintiff on the issue of willfulness and apply the two-year limitations period because Schroeder has not produced evidence of willfulness sufficient to

4

create a genuine issue. Thus, according to Sager, the plaintiff could only recover back pay for a period of two years, which would bar her recovery completely because she was not working at Sager two years before the date of her amended complaint.

On the other hand, Schroeder argues that, pursuant to Rule 15(c), Fed. R. Civ. P., her amended complaint relates back to the date of her original complaint for the purposes of the statute of limitations. Schroeder further argues that the court need not limit recovery of back pay to two or three years. Specifically, Schroeder argues that the doctrine of continuing violations allows the award of back pay to reach beyond the limitations period. Schroeder also objects to Sager's request for summary judgment on the issue of willfulness because, she contends, willfulness is an issue of fact and she has produced sufficient evidence to avoid summary judgment.

a. Standard for Summary Judgment

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Because the purpose of summary

judgment is issue finding, not issue determination, the court's function at this stage "'is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Sav., 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. CastilloRodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the court must scrutinize the entire record in the light most favorable to the non-movant, with all reasonable inferences resolved in that party's favor. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994).

"In general, . . . a party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F. 3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

6

(1986)), <u>cert. denied</u>, 515 U.S. 1103 (1995).

When a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial," there can no longer be a genuine issue of material fact. <u>Celotex Corp.</u>, <u>supra</u>, 477 U.S. at 322-23. The failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>id.</u>

### b. Rule 15(c)

To determine whether the statute of limitations bars Schroeder's complaint, the court must first decide whether the amended complaint relates back to the date of the original complaint, which Schroeder filed within the two-year limitations period. An amended complaint relates back to the date of the original pleading when "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." Rule 15(c)(2), Fed. R. Civ. P. Thus the question presented is whether Schroeder's EPA claim arises from the same conduct, transaction, or occurrence set forth in her original pleading.

Courts applying Rule 15(c) seek to strike a balance between competing interests. On the one hand, the Federal Rules have liberalized pleading, preferring that courts decide cases on the merits. However, fairness to the other party also enters the calculation. The requirement that the new claim arise from the "same conduct, transaction, or occurrence" ensures that the opposing party is not prejudiced in its defense. The United States Court of Appeals for the Seventh Circuit aptly identified this tension.

> "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and affect the principle that the purpose of pleading is to facilitate a proper decision on the merits." But competing considerations enter the fray when a lawyer's mistake (either of fact or of law) can prejudice the other side's defense. It may then become difficult or impossible to avoid a result dictated by the skill of counsel rather than by the merits of the client's case.

Woods v. Indiana Univ.-Purdue Univ., 996 F.2d 880, 882 (7th Cir. 1993) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1958)).

Some courts have developed narrow tests to determine whether the amended complaint relates back, such as whether the same evidence is necessary to prove both the original and the amended complaint. See Miller v. Werner, 431 S.W.2d 116, 118 (Mo. 1968). Sager asks the court to apply such a narrow test and hold that Schroeder's amended complaint does not arise from the same

8

conduct, transaction, or occurrence because the amended complaint states a different cause of action for a violation of a different statute and substantially alters the damage focus.  See Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 4.  However, most courts have rejected narrow tests in favor of the standard espoused in the rule itself.  See 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1497 (1990).  Specifically, courts have allowed claims to relate back regardless of whether they state a cause of action under a different statute.  See, e.g., Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 581 (1945) (allowing amendment alleging violation of Boiler Inspection Act to relate back to original complaint filed under Federal Employers Liability Act).  See McGregor v. Louisiana State Univ. Bd. of Supervisors, 3 F.3d 850, 864 (5th Cir. 1993);  WRIGHT, supra.

This court believes it is preferable to eschew narrow tests in favor of a broader inquiry into the facts underlying the original complaint.  Thus, to determine whether an amended pleading arises from the same conduct, transaction, or occurrence, the court will first look to see if the factual claims raised in the original complaint support the new claim. Notice to the other party serves as a guide in this inquiry.

One gloss courts universally have added to the same conduct,

9

transaction, or occurrence test is the requirement that the opposing party be put on notice by the original pleading. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984); O'Loughlin v. National R.R. Passenger Corp., 928 F.2d 24, 26 (1st Cir. 1991); Forzley v. AVCO Corp., 826 F.2d 974, 981 (11th Cir. 1987). When the original pleading has given the opposing party sufficient notice of the nature of the suit, the purpose of the statute of limitations has been fulfilled and there is no reason to bar the subsequent claim. See Tiller, supra, 323 U.S. at 581; O'Loughlin, supra, 928 F.2d at 26 (citing WRIGHT, supra). Thus, the original complaint must be related closely enough to the amended complaint to have afforded the opposing party adequate opportunity to prepare its defense.

Whether the requisite notice can be obtained from sources other than the original pleading is an interesting question upon which courts have disagreed. See WRIGHT, supra. Although Professors Wright and Miller advocate looking for notice outside the pleadings "since it is unwise to place undue emphasis on the particular way in which notice is received," the First Circuit advocates caution when using extrinsic evidence of notice. WRIGHT, supra; see O'Loughlin, supra, 928 F.2d at 27. In O'Loughlin, the court rejected the plaintiff's argument that correspondences notified the defendant of the basis of the

10

plaintiff's claim.  Id., 928 F.2d at 27.  The court noted that "Rule 15(c) confines inquiry to the fact situation 'set forth or attempted to be set forth' in the original complaint."  Id. Allowing contradictory extrinsic evidence "involves too great a potential for confusing and uncontrolled collateral fact-finding."  Id.

The court finds that Schroeder's allegation in the original pleading that "Sager paid Ms. Schroeder less than her male co-workers," set forth the same conduct that now forms the basis of her EPA claim.  Complaint ¶ 21.  Because wage discrimination was one of the factors Schroeder alleged contributed to her constructive discharge, Sager was on notice that it would have to prepare a defense on this issue.  See Benfield v. Mocatta Metals Corp., 26 F.3d 19, 23 (2d Cir. 1994) (allowing relation back of RICO claim when claim would require evidence of same wrongful acts alleged in original complaint for fraud).

Schroeder also points to the court's June 6, 1995, pretrial order as evidence that Sager had notice of her EPA claim.  See Plaintiff's Objection at 8.[1]  Although the early discussion of a

_____

[1]Sager's argument that the plaintiff should be bound by the pretrial order is unavailing.  Although the court's order did indicate that the plaintiff would file for leave to amend within thirty days, a plaintiff is free to request leave to amend at any time.  Schroeder retained her right to petition the court for leave to amend, and exercised this right.  The court granted her request, and in doing so determined that allowing the petition

11

potential EPA complaint may undermine Sager's claim that it would be prejudiced by a lack of notice if the EPA claim relates back, the court declines to rely on the pretrial order.  Because the original pleading gave Sager adequate notice, the court need not consider extrinsic evidence.

### c. Damages

Because Schroeder's EPA complaint relates back to the date of her original complaint, the statute of limitations does not bar her EPA claim completely.[2]  However, Sager has requested partial summary judgment on the issue of damages.  Sager contends that Schroeder has not proffered sufficient evidence that Sager willfully violated the EPA, therefore entitling Sager to judgment on the issue of willfulness as a matter of law and limiting Schroeder's potential recovery of back pay to two years.  Thus,

_____

was not unduly prejudicial to Sager.

[2]The applicable statute of limitations, 29 U.S.C. § 255, provides that:

> Any action . . . to enforce any cause of action . . . under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], . . .
> (a) . . . may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

according to Sager, if she prevails, Schroeder can be entitled to damages for only two years prior to the date of her original complaint.

Schroeder argues that willfulness is not relevant because, under the continuing violation theory, she is entitled to recover back pay for the entire period she was underpaid. In the alternative, Schroeder contends that willfulness is an issue of fact that the court cannot decide on summary judgment. See Plaintiff's Memorandum of Law in Support of Objection to Motion for Summary Judgment at 11. Accordingly, the court must determine whether, as a matter of law, plaintiff can recover back wages for a period beyond the two or three years provided in the statute of limitations and whether summary judgment on the issue of willfulness is appropriate. See 29 U.S.C. § 255 (1994).

### (1) Continuing Violations

Schroeder argues that the continuing violation theory, which courts have applied to both Title VII and EPA claims, allows plaintiffs to recover for violations that otherwise would be barred by the statute of limitations. The continuing violation theory, according to Schroeder, can allow her to recover back pay for violations more than two or three years old if those violations have a substantial relationship with another violation

13

that has occurred within the limitations period.  However, for the reasons discussed below, the court finds that Schroeder has misconstrued the effect of the continuing violation theory.

Courts have applied the continuing violation theory to a number of different situations that arise under both Title VII and the EPA.  See Thomas H. Brooks, et al., Second Generation Problems Facing Employers in Employment Discrimination Cases: Continuing Violations, Pendent State Claims, and Double Attorneys' Fees, 49 Law & Contemp. Probs. 25, 26 (1986).  In the Title VII context, plaintiffs use the continuing violation theory to avoid Title VII's requirement that a plaintiff file a charge with the EEOC within 180 days of the violation.[3]  See id.  Courts allow plaintiffs in Title VII cases to recover back pay for violations that occurred more than 180 days before their complaint to the EEOC.  However, a separate section of Title VII limits recovery of back pay to two years before the date of the complaint.  See 42 U.S.C. § 200e-5(g); Sabree v. United Bhd. of Carpenters & Joiners, 921 F.2d 396, 401 (1st Cir. 1990).  The EPA, however, does not contain an administrative filing requirement.  Therefore, in the EPA context, the continuing

_____

[3]Unlike the EPA, Title VII requires an employee to file a complaint with the EEOC within 180 or 300 days after the alleged discrimination took place.  A separate section provides that a court can award back pay for a period of two years before the filing of a complaint.

violation theory is only relevant to the single applicable statute of limitations provided in 29 U.S.C. § 255.

In the EPA context, plaintiffs usually apply the continuing violation theory to overcome the defendant's argument that the statute of limitations completely bars the action. See, e.g., Mitchell v. Jefferson County Bd. of Educ., 936 F.2d 539, 548 (11th Cir. 1991); Brewster v. Barnes, 788 F.2d 985, 993 (4th Cir. 1986). In these cases, the label "continuing violation" may be a bit of a misnomer. Courts applying the theory do not treat the alleged unequal pay as a single violation continuing over time. Rather, courts use the theory to overcome a defendant's contention that the cause of action accrued when the employer set the salary or when the employee accepted the position. See id. Instead of viewing the cause of action as one that accrued on one date, courts applying the continuing violation theory look at each paycheck as a separate violation of the statute. See, e.g., id. Thus, although a violation has been occurring for a period of time, the statute of limitations will not prevent an employee from bringing suit.

Although most courts accept the premise that each paycheck represents a new violation, restarting the statute of limitations, these courts do not allow plaintiffs to collect back pay for a period in excess of two years or, for a willful

15

violation, three years.  See Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168 (8th Cir. 1995) (en banc); Gandy v. Sullivan County, Tenn., 24 F.3d 861, 865 (6th Cir. 1994); Mitchell, supra, 936 F.2d at 548; Hamilton v. 1st Source Bank, 895 F.2d 159, 165 (4th Cir. 1990).  Limiting plaintiff's recovery to two or three years is consistent with Congress's intent to "place a limit on employers' exposure to unanticipated contingent liabilities."  McLaughlin, supra, 486 U.S. at 132.

In this case, the court cannot allow the plaintiff to recover back wages for a period of more than two or three years prior to the filing of her complaint.

### (2) Willfulness

Sager asks the court to enter summary judgment on the issue of willfulness because, it contends, Schroeder has no evidence to support her contention that Sager acted willfully.  On the other hand, Schroeder contends that she has met her burden.  The parties also appear to disagree over the appropriate standard for determining willfulness.  Sager states that Schroeder must show that "Sager knew or had reckless disregard for whether its conduct was prohibited by the EPA."  Defendant's Memorandum of Law in Support of its Motion for Summary Judgment at 18.  However, Schroeder believes that "the test for determining

16

whether there had been a willful violation of EPA is 'whether the employer knew or had reason to know that the [Fair Labor Standards Act] was applicable to its employment practices. Neither bad faith nor knowledge that a particular practice violates the Act is required.'" Plaintiff's Memorandum of Law in Support of Objection to Motion for Summary Judgment at 9 (quoting EEOC v. McCarthy, 768 F.2d 1, 5 (1st Cir. 1985)).

According to the Supreme Court, a defendant willfully violates the Equal Pay Act when that defendant either knows it is violating the statute or acts with reckless disregard for whether its conduct is prohibited by law. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1987); Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1079 (1st Cir. 1995). The standard cited by the plaintiff--whether the defendant knew the statute was applicable to its conduct--is no longer good law. See McLaughlin, supra, 486 U.S. at 132. Although the United States Court of Appeals for the First Circuit previously employed the more inclusive standard of willfulness, the more stringent standard the Supreme Court announced in McLaughlin replaced that standard. Compare EEOC v. McCarthy, 768 F.2d 1, 5 (1st Cir. 1985) (holding employer willful when it knew or had reason to know that the statute was applicable to its employment practices), with Reich, supra, 44 F.3d at 1069 (quoting

17

McLaughlin, supra, 486 U.S. at 133). In McLaughlin, the Supreme Court resolved a split in the circuits over the proper standard for determining willfulness. See 486 U.S. at 131. The Court adopted the more stringent standard, noting that by adopting a two-tiered structure in the statute of limitations, Congress had intended to retain the general two year limit and to "draw a significant distinction between ordinary violations and willful violations." Id. at 132.

Although willfulness is a factual determination that normally should be decided by a jury, to survive summary judgment on the issue of willfulness the plaintiff must show more than a potential violation of the statute. See Lopez v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1515 (1st Cir. 1991). To create a factual dispute about whether the defendant willfully violated the statute, the plaintiff must proffer evidence indicating that the defendant knew or recklessly disregarded the possibility it was violating the law. See McLaughlin, supra, 486 U.S. at 132.

Although the court requires some evidence of willfulness, the court will not require direct evidence that the employer knew it was violating the statute. A plaintiff can prove willfulness by providing direct evidence, such as evidence that the defendant previously has been cited for violating the statute and has

18

failed to alter its conduct. However, the plaintiff need not show that the defendant knew its conduct was illegal. An employer who recklessly disregards the law is also willful. See McLaughlin, supra, 486 U.S. at 132. The finder of fact may infer that the defendant was reckless when the employer was not relying on a defensible interpretation of the law. See, e.g., Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 586 (9th Cir. 1993), cert. denied 510 U.S. 1109 (1994); Glenn v. General Motors Corp., 841 F.2d 1567, 1573 (11th Cir.), cert. denied 488 U.S. 948 (1988); Dean v. United Food Stores, Inc., 767 F. Supp. 236, 241 (D.N.M. 1991). For instance, in Glenn, the defendant sought to justify a pay discrepancy between men and women by arguing that it paid as much as was required to induce the individuals to accept the position. See Glenn, supra, 841 F.2d at 1570. Thus, the employer argued, the pay differential was based on a factor other than sex. See id. The Eleventh Circuit, in upholding the finding of willfulness, noted that "GM showed reckless disregard because . . . GM sought to rely on the market force theory, a theory long discredited by this Court and the Supreme Court." Id. at 1573.

In this case, Schroeder relies on three affidavits to meet her burden. See Plaintiff's Memorandum in Support of Objection to Motion for Summary Judgment at 10. Plaintiff points to her

19

own allegations relating to Sager's failure to promote her. Specifically, Schroeder indicates that she confronted her supervisor, Mr. Murphy, making him aware that she believed his failure to promote her in 1988 was discriminatory. See Schroeder Aff. ¶ 1. In addition, Schroeder offers the affidavit of Kelly Smith, an employee in Sager's Hingham, Massachusetts, office, who alleges that Sager discriminated against her by failing to promote her and by demoting her after she announced that she was pregnant. See Smith Aff. ¶¶ 2-12. These incidents, construed in the light most favorable to the plaintiff, may demonstrate a pattern of Title VII violations; however, they do not reflect directly upon the EPA claim. Evidence that the defendant made discriminatory promotion decisions does not show that the defendant knew or recklessly disregarded the possibility that it was violating the EPA.

The only evidence plaintiff offers that bears directly upon her EPA claim is the affidavit of Gabrielle Jenkins, which shows that Sager paid male salespeople in Massachusetts a higher wage than Schroeder received. See Jenkins Second Aff. ¶¶ 4, 9. The jury may or may not determine that this discrepancy amounts to a violation of the EPA. However, this evidence does nothing to establish the willfulness of the purported violation. Sager contends that its Massachusetts and New Hampshire offices are not

20

the same "establishment," as required by the EPA. Although Sager ultimately may prove to have misinterpreted the law, its position cannot be said to amount to reckless disregard for the law. See EEOC v. Madison Community School Dist. No. 12, 818 F.2d 577, 586 (7th Cir. 1987) ("maintaining a defensible view of what a statute requires is not the same thing as willfully violating the statute").

Without any evidence--direct or circumstantial--that Sager's alleged violation of the EPA was willful, the court must enter summary judgment in favor of the defendant on the issue of willfulness. Because Schroeder has not provided evidence that Sager willfully violated the EPA, if she is successful at trial, she may recover back pay for the period from April 6, 1993 (two years prior to her original complaint) until August 22, 1994 (the day she resigned from Sager).

## 2. Defendant's Motion in Limine

Sager asks the court to exclude evidence of certain gender references made by Sager personnel. Sager contends that Mr. Murphy's comment that Schroeder was denied a promotion in 1988 because she needed to be home with her stepchildren, Mr. Gabriel's comment about her appearance, and Mr. Norton's reference to one of her former customers as a "lesbian" are

21

irrelevant and should be excluded under Rule 402, Fed. R. Evid. In the alternative, Sager argues that the court should exclude the evidence because its prejudicial tendency substantially outweighs any probative value of this evidence. See Rule 403, Fed. R. Evid.

The standard of relevancy under the Federal Rules of Evidence is quite lenient. The court must consider evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence." Rule 401, Fed. R. Evid. Although evidence of minimal probative value may meet this standard, the court may exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403, Fed. R. Evid.

The relevance of the evidence in question here will depend upon the purpose for which the evidence is introduced. To prove her prima facie claim, Schroeder only needs show that "the employer paid different wages to an employee of the opposite sex for substantially equal work." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995). The evidence of improper gender references is not relevant to Schroeder's prima facie case. However, this evidence may yet have some probative value.

At trial, if Sager establishes one of the affirmative

22

defenses provided by the EPA, the evidence of improper statements may be relevant in rebuttal to show pretext. However, the court cannot rule on the relevancy, or the potential of unfair prejudice until that time. The relevancy of this evidence will depend upon the course of trial and may raise a problem of conditional relevance. For instance, the relevance of Schroeder's evidence may depend upon her establishing that the people who made the comments were capable of influencing her compensation. The court will determine the admissibility of this evidence when the issue arises at trial.

3. Plaintiff's Motion in Limine to Exclude the Testimony of Defendant's Expert

Schroeder has asked the court to exclude the testimony of Sager's expert, William Alden, for failure to provide an adequate expert report pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P. Schroeder contends that Mr. Alden's one-page letter stating that in his experience generally prevailing wages in New Hampshire are significantly lower than in Massachusetts is insufficient. In the alternative, Schroeder requests that the court limit Mr. Alden's testimony to the substance of his expert report or exclude Mr. Alden from testifying as an expert. Sager counters that Mr. Alden's statement satisfies the requirements of Rule

26(a)(2)(B).

Rule 26 requires an expert disclosure to contain

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Rule 26(a)(2)(B), Fed. R. Civ. P. At issue here is whether Mr. Alden's letter contains a complete statement of the basis and reasons for his opinion and the data and information considered by Mr. Alden in forming his opinion. See id.

The court finds that Mr. Alden's report is not sufficiently detailed. An expert report must be detailed enough to allow the opposing party to prepare its cross examination and should often dispense with the need to depose the expert. See JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 26.23[2][b]; Rule 26, Fed. R. Civ. P., advisory committee's note; Sierra Club, Lone Star Chapter v. Cedar Point Oil, 73 F.3d 546, 571 (5th Cir. 1996). However, because Sager's expert disclosure was timely and complied with the other requirements of Rule 26, the court will not exclude Mr. Alden's testimony for failure to comply. The court grants Sager

24

until November 6, 1997, to provide a complete statement of the basis of Mr. Alden's testimony.

The court will defer decision on Mr. Alden's qualification as an expert witness until the time of trial. At that time, Schroeder may examine the witness voir dire without the jury present.

## 4. Defendant's Motion for a Protective Order Pursuant to Rule 26(c)(1), Fed. R. Civ. P.

On August 22, 1997, Sager asked the court to issue an order suspending defendant's obligation to respond to Schroeder's interrogatories and requests for production of documents until the court had ruled upon the preceding pending motions. Because the court has herein ruled on all pending motions, defendant's request is moot, and is therefore denied.

## 5. Plaintiff's Motion to Compel

Schroeder asks the court to compel Sager to answer her third and fourth sets of interrogatories. Sager contends that the court should deny Schroeder's motion to compel because Schroeder has exceeded the twenty-five interrogatories permitted by Rule 33(a), Fed. R. Civ. P., and her additional interrogatories are excessive. Sager also argues that Schroeder's discovery requests

pertaining to its subsidiary Northstar are irrelevant.

Rule 33(a) requires the court to grant leave to serve additional interrogatories "to the extent consistent with the principles of Rule 26(b)(2)." Rule 33(a), Fed. R. Civ. P. Rule 26(b) permits the court to limit discovery when 1) the discovery is unreasonably cumulative; 2) the party seeking discovery has had ample opportunity to obtain the information sought; or 3) the burden or expense of the proposed discovery outweighs its benefit.

In this case, the court finds that compelling Sager to answer Schroeder's third set of interrogatories is appropriate. The information sought through these interrogatories is not unreasonably cumulative. Furthermore, although Schroeder has had some opportunity to obtain the information sought, the court is mindful that early discovery focused on Schroeder's Title VII complaint. Because Schroeder did not add her EPA claim until relatively late in this litigation, the court considers it appropriate to allow these interrogatories. Finally, despite Sager's contention to the contrary, the court is not convinced that answering the three questions contained in Schroeder's third set of interrogatories would be unduly burdensome.

The court, however, is not convinced that Schroeder's requests for information relating to Northstar are relevant to

26

the pending action.  Under the federal rules, while liberal discovery is permitted, parties may only obtain discovery regarding matters that are relevant to the subject matter involved in the pending dispute.  Rule 26(b)(1), Fed. R. Civ. P. In this case, because Northstar was a separate entity at the relevant times, and sold a completely different product line, information about Northstar is not relevant to Schroeder's case against Sager.  Furthermore, even if information about Northstar is of some relevance to Schroeder's case, its importance to the case is so minimal that the burden to Sager of producing this information clearly would outweigh its benefit.

Accordingly, the court orders Sager to answer Schroeder's interrogatories only to the extent that they request information pertaining to Sager.

Conclusion

For the aforementioned reasons, the court hereby 1) grants in part and denies in part Defendant's Motion for Summary Judgment (document 47); 2) denies Plaintiff's Motion in Limine to Exclude the Testimony of Defendant's Expert (document 50), but orders defendant to produce a complete statement of the basis for Mr. Alden's testimony by November 6, 1997; 3) denies Defendant's Motion in Limine (document 54); 4) denies Defendant's Motion for

a Protective Order Pursuant to Fed. R. Civ. P. 26(c)(1) (document 62); and 5) grants Plaintiff's Motion to Compel (document 65) to the extent that plaintiff requests information pertaining to Sager.

**SO ORDERED.**

                                            _____
                                            Shane Devine, Senior Judge
                                            United States District Court

October 8, 1997

cc:    Thomas J. Pappas, Esq.
        Linda S. Johnson, Esq.
        James M. Hughes, Esq.